**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-03241-RBJ

TRANSLOGIC CORPORATION, d/b/a SWISSLOG HEALTHCARE,

    Plaintiff,

v.

MARSH USA, INC.,

    Defendant.

---

**PLAINTIFF'S RESPONSE TO MARSH USA, INC'S MOTION TO DISMISS OR STAY THE COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b)(3), FED.R.CIV.P. 12(b)(6), AND FED.R.CIV.P. 26(C)(1); IN THE ALTERNATIVE, MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404 [DOC. 27, 28]**

---

Plaintiff Translogic Corporation d/b/a Swisslog Healthcare, by and through its counsel, Bradley A. Levin and Kerri J. Rugh of Levin Sitcoff PC, submits the following response in opposition to Marsh USA, Inc.'s Motion to Dismiss or Stay the Complaint Pursuant to Fed.R.Civ.P. 12(b)(3), Fed.R.Civ.P. 12(b)(6), and Fed.R.Civ.P. 26(c)(1); in the Alternative, Motion to Transfer Pursuant to 28 U.S.C. § 1404, [Doc. 27] (the "Motion") and the Memorandum submitted in support thereof [Doc. 28] (the "Memorandum"), and in support states as follows:

### I.    INTRODUCTION

This case arises out of the failure of Defendant Marsh USA, Inc. ("Marsh") to advise Hudson Specialty Insurance Company ("Hudson") that Plaintiff Translogic Corporation d/b/a Swisslog Healthcare ("Swisslog") had acquired a new business, Talyst Systems, LLC ("Talyst"), in August 2017. Hudson insured Swisslog under a liability policy protecting Swisslog against

claims arising out of "glitches" in its manufacturing services (the "Hudson Policy"). Swisslog was sued by Wellfount Corporation ("Wellfount") in Washington state district court in February 2019 over medication-dispensing machines that had been sold by Talyst pre-acquisition. Because Hudson was not timely informed that Swisslog had acquired Talyst, Hudson told Swisslog not only were there serious questions of coverage for the claims, but it threatened rescission of the Hudson Policy and declined to participate in the litigation. Settlement negotiations in January 2020 proceeded unsuccessfully without contribution from Hudson, and so Swisslog continued to be embroiled in the Wellfount litigation at significant cost in employee hours and time until the matter concluded with a jury verdict in favor of Swisslog and Talyst in May 2021.

Marsh asks the Court to find that the case has been brought in the wrong forum and that it has no merit under New York law. Neither proposition is legally correct. Venue is proper because the parties and conduct at issue are all tied to Colorado and the contractual venue provision is permissive, not mandatory. Further, the forum selection clause does not apply to the claims here. Even if it did, New York has no relationship to the acts forming the basis of the claims against Marsh or to Swisslog, and public interest dictates that the case should be kept in Colorado. Moreover, Colorado law and not New York law governs the tort claims here and, under either state's laws, Swisslog has stated cognizable claims for relief against Marsh. For these reasons, the Motion must be denied.

## II. ARGUMENT

### A. Rule 12(b)(3) Is Not The Proper Means Of Enforcing A Forum Selection Clause.

As an initial matter, Federal Rule of Civil Procedure 12(b)(3) cannot be used to enforce a forum selection clause. *See Atlantic Marine Constr. Co. v. U. S. District Court,* 571 U.S. 49, 56,

2

134 S.Ct. 568, 577 (2013). "[A] case filed in a district that falls within [28 U.S.C.] § 1391 may not be dismissed under [28 U.S.C.] § 1406(a) *or Rule 12(b)(3)*." 571 U.S. at 577 (emphasis added). Thus, if the case could be filed in the U.S. District Court for the District of Colorado pursuant to Section 1391, Rule 12(b)(3) is improperly invoked by Marsh for dismissal of the suit, regardless of any forum selection clause.[1]

Colorado is a district in which this case could be brought. Section 1391 governs all civil actions in federal district court and provides for venue in both "(1) a judicial district in which any defendant resides . . .; [and] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(b). Venue is proper in Colorado pursuant to subsections (1) and (2).

With respect to subsection (1), a corporation is deemed to be a resident of "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question[.]" 28 U.S.C. § 1391(c)(2). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Ubel v. Progressive Direct Ins. Co.,* 2020 U.S.Dist. LEXIS 181773, at *3 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851 (2011).) In addition, a corporation is subject to specific personal jurisdiction in a district with which it has minimum contacts. "The 'minimum contacts' test examines whether the defendant has purposefully directed its activities at residents of the forum state, whether the claims

---

[1] Marsh improperly quotes the *Riley v. Kingsley Underwriting Agencies, Ltd.,* 969 F.2d 953, 956 (10th Cir. 1992) holding as "motions to dismiss 'based on forum selection clauses are analyzed as motions to dismiss for improper venue under Fed.R.Civ.P. 12(b)(3).'" Memorandum, p. 4.

asserted arise out of that purposeful direction of activity, and whether the assertion of jurisdiction under the circumstances is reasonable and fair." *Otter Products, LLC v. Seal Shield, LLC,* 2014 U.S. Dist. LEXIS 38429, at *5 (D.Colo. Mar. 24, 2014).

Marsh has more than enough contacts with Colorado to be subject to either general or specific personal jurisdiction in this district. Marsh is a multi-national corporation with two Colorado locations: one place of business is located at 1225 17th Street, Suite 1300, Denver, Colorado, 80202, and the other is 385 Interlocken Crescent, Central Park Tower, Broomfield, CO 80021.[2] At the time of this filing, Marsh has twenty-three (23) job postings advertised for the Colorado offices.[3] The corporation has been submitting filings with the Secretary of State of Colorado since 2004 or earlier.[4] Furthermore, Richard Kimball, a Senior Vice President and Senior Client Executive who is located in Marsh's Denver office, signed the Agreement. Exhibit 4; Exhibit 5. Along with Mr. Kimball, Dan Chilton, Dan Killibrew, Dan Dionne, and Stan Marwin were involved in the management of Swisslog's account and / or the issues involving Hudson, and all are located in Marsh's Denver office. Exhibit 6, 7, 8. Mr. Kimball reached out from Colorado to communicate with others outside this state about Swisslog's insurance coverage. Exhibit 9. Thus, the actions out of which Swisslog's claims arise were carried out in Colorado.

The foregoing "continuous and systematic" contacts with Colorado establish that this Court has general jurisdiction over Marsh, a corporation that has made extensive efforts to establish its presence in this state. Further, Marsh has purposefully directed activities to not only Swisslog, but to other Colorado residents as well. And, a substantial part of the events or omissions giving rise

---

[2] https://www.marsh.com/us/contact-us/office-locator.html ; https://careers.mmc.com/global/en/search-results?keywords=&s=1 ; Exhibit 1; Exhibit 2.
[3] *Id.*
[4] Exhibit 3.

4

to this action occurred in Colorado. Accordingly, venue is proper in the U.S. District for the District of Colorado pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2). Because venue is proper here, venue is not "improper" or "wrong" and, therefore, Rule 12(b)(3) does not provide a means by which the Court can dismiss this case. *Atlantic Marine,* 571 U.S. 580.

### B. Enforcement Of The Forum Selection Clause Is Governed By 28 U.S.C. §1404.

Marsh seeks to use the Motion to enforce the forum selection language in the Agreement. "[F]ederal law, specifically 28 U.S.C. § 1404(a), governs the District Court's decision whether to give effect to [a] forum-selection clause." *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 32, 108 S.Ct. 2239, 2245 (1988). To justify a transfer on Section 1404(a) grounds, the Court must first determine that the contractual forum selection clause is mandatory rather than permissive and if so, whether it applies to the claims at issue. *See, e.g., Great Big Color, Inc. v. Bishop Taylor Group, LLC,* 2007 U.S. Dist. LEXIS 86841, at *3-4 (D.Colo., Nov. 13, 2007).

Under Tenth Circuit law, a forum-selection clause is deemed to be mandatory when it refers to a specific venue rather than jurisdiction and uses language evincing exclusivity of that venue. *K & V Scientific Co. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW")*, 314 F.3d 494, 500-01 (10th Cir. 2002). "'Mandatory forum selection clauses contain clear language showing that jurisdiction is appropriate only in the designated forum.' . . . 'In contrast, permissive forum selection clauses authorize jurisdiction in a designated forum, but do not prohibit litigation elsewhere.'" *Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 321 (10th Cir. 1997) (citations omitted). Any ambiguity results in the clause being deemed permissive rather than mandatory. *See K.V. Scientific, supra,* 314 F.2d at 500-01. As for determining scope, "a forum-selection clause is evaluated according to ordinary principles of contractual interpretation."

*Kelvion, Inc. v. Petrochina Can., Ltd.*, 918 F.3d 1088, 1092 (10th Cir. 2019).   The Tenth Circuit Court of Appeals has thus held that a contractual forum-selection clause will apply to "claims that 'ultimately depend on the existence of a contractual relationship between the parties,' . . .; where 'resolution of the claims relates to interpretation of the contract' . . .; or when claims 'involv[e] the same operative facts as a parallel claim for breach of contract'" . . .." *Kelvion, supra,* 918 F.3d at 1092 (citations omitted).

### 1. The Clause Is Permissive, Not Mandatory.

The forum selection clause, found in Section 9 of the Agreement, reads:

> Any litigation or other proceedings arising from or relating to this Agreement or any services provided by Marsh or its affiliates to you or your affiliates shall be brought in the state or federal courts located in the State of New York, County of New York, United States of America, and the parties consent to the jurisdiction of such courts in connection therewith.

Ex. 4, p. 3.  This language is permissive, not mandatory, because it does not contain a clear statement that the only appropriate place for venue of the action is in a particular tribunal; venue elsewhere than "state or federal courts located in" New York is not prohibited.  "Shall" does not designate exclusivity, and rather than specify a particular venue ("state or federal courts located in the State of New York, County of New York, United States of America"), the verbiage expressly refers to the parties consenting to jurisdiction.  *See K & V Scientific, supra,* 314 F.3d at 500.  At best the clause ambiguously mandates venue in New York, which requires that it be construed as non-exclusive.  *See id.* at 500-01.  Being a non-exclusive venue clause, the Court is not required

6

to transfer the case to New York "state or federal courts."[5]

### 2. The Claims Do Not Fall Within The Scope Of The Forum Selection Clause.

Moreover, the claims in this case do not fall within the forum selection clause's scope. Swisslog has asserted claims for negligence, negligent misrepresentation, and negligent failure to procure. A written contract between the parties is not necessary in order for Marsh to have a duty to use reasonable care in its transmission of information to Swisslog's insurers. *See, e.g., Kaercher v. Sater,* 155 P.3d 437, 441 (Colo. App. 2006) (insurance agent has general duty of care to clients). Further, none of the issues in this case relates to an interpretation of the Agreement between Marsh and Swisslog.

Indeed, the facts surrounding Marsh's failure to tell Hudson of Swisslog's Talyst acquisition would not make out a cause of action for breach of the Agreement. The boilerplate form does not contain any provision that addresses communication with insurance companies on behalf of the client. Marsh simply states that it will act as the insurance broker or risk manager and then specifies the services that are encompassed within those designations:

> Pre-Marketing Services
> (a) Conduct an initial strategy discussion in advance of each placement;
> (b) Assist you in assessing your risks and in developing insurance specifications which Marsh will submit to insurers;
> (c) Recommend potential insurers;
>
> Marketing and Placement Services
> (d) Solicit quotes from insurers that you select;
> (e) Negotiate on your behalf with insurers;
> (f) Assist you in evaluating the options received from insurers;
> (g) Use best efforts to place insurance for you, but only after you have authorized Marsh to bind coverage for you;

---

[5] The Court does not have the authority to transfer to a state court under § 1404(a), only to a sister federal district court. However, the doctrine of *forum non conveniens* provides for transfer to a state or foreign forum, and the analysis is the same. *See Atlantic Marine, supra,* 571 U.S. at 59.

> Services related to Marsh placements
> (h) Deliver confirmation of coverage once it is placed;
> (i) Follow up with insurance carriers to obtain policies and/or endorsements. Marsh may deliver your insurance policies and endorsements to you electronically;
> (j) Review policies and endorsements for conformity with agreed terms and coverages;
> (k) Provide coverage summaries;
> (l) At your request, issue certificates or memoranda of insurance and/or auto identification cards;
> (m) Review premium and exposure audits, rating adjustments, dividend calculations and loss data;
> (n) Provide you with invoices, except in the case of direct billing by insurers. Remit premiums to insurers and, where applicable, remit taxes and fees to the relevant authorities, following receipt thereof from you;
> (o) Monitor published financial information of your current insurers and alert you when one of those insurers falls below Marsh's minimum financial guidelines.

Ex. 4, p. 1. Marsh's failure to contact Hudson was not a breach of any one of those contractual provisions. The claims thus do not "'involv[e] the same operative facts as a parallel claim for breach of contract.'" *Kelvion, supra,* 918 F.3d at 1093. They do not arise from or relate to the foregoing services provided by Marsh. A breach of contract claim does not lie here and, for that reason, was not asserted in the Complaint. The result is that this lawsuit is not encompassed within the scope of the forum selection clause. *See also, Lawson,* 2019 U.S. Dist. LEXIS 157656, at *8-11 (forum clause providing for venue for claims "arising out of or relating to" employment agreement did not include all claims arising out of or relating to the employment).

### 3. Public Interest Factors Militate Against Transferring The Case.

Even if the forum selection clause was mandatory, and the claims in this lawsuit were encompassed within it, the Court must still evaluate the public interest factors to determine whether transfer is appropriate. *See Atl. Marine, supra,* 571 U.S. at 581-83; *Kelvion, supra,* 918 F.3d at 1091. "[R]elevant public-interest factors include the interest in judicial economy, administrative difficulties arising from court congestion, the burden of jury duty on members of a community unconnected to the litigation, the interest in deciding local controversies at home, and the desire to have cases tried in a forum that is familiar with the governing law." *Lawson v. Global Payments,*

8

*Inc.*, 2019 U.S. Dist. LEXIS 157656, at *14-15 (D.Colo. Sept. 16, 2019).

Each of these factors points towards keeping the case in this Court. First, New York has no connection at all with the acts forming the basis for the claims or the relationship between the parties from which the claims flow. By contrast, Swisslog is a Colorado resident with its principal place of business in Westminster, Colorado, and its principal mailing address in Broomfield, Colorado. *See* Exhibit 10. The Swisslog employees and representatives involved in managing the company's insurance portfolio are located in Colorado, and more importantly, so are many of the Marsh employees involved with this account. *See* Exhibit 5, 11. Lesa Stellke, who Swisslog referred to as its broker in the July / August 2017 time frame, was directly involved in many insurance acquisition activities for Swisslog and she, too, is located in Denver. *See* Exhibit 12, p. 2; Ex. 11. Other employees assigned to the Swisslog account or who were called into service when the Hudson debacle came to light have Denver office roots. Colorado has a strong interest in resolving claims brought by and against its residents. *See e.g., Lawson, supra,* at *16 ("Colorado therefore has a strong interest in the adjudication of this case both as plaintiff's state of residence and as the locus of the parties' dispute.") Conversely, a substantial burden would be placed on the residents of New York by forcing them to decide a case that has no connection to their state. These two factors tip the scales in favor of keeping the case in Colorado.

Judicial economy and administrative difficulties with court congestion also militate against transferring the case. The relevant court congestion statistics for purposes of a section 1404(a) analysis are: median time from filing to disposition and to trial; number of pending cases per judge; and average weighted filings. *See, e.g., Emplrs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010). Statistics from the United States Courts show that the U.S.

District Court for the Southern District of New York ("SDNY") and the U.S. District Court for the District of Colorado ("USDC") are roughly equal in terms of the median time from filing of a case to disposition (6.6 and 7.6 months, respectively) and median time from the filing of a civil case to trial (31.4 and 33.9 months, respectively). *See* Exhibit 13, [fcms_na_distcomparison0930.2020.pdf (uscourts.gov)](). SDNY has almost 100 more pending cases per judge than USDC at 673, but roughly 100 fewer weighted filings. *See id.* However, the number of cases greater than three (3) years old is significantly higher in SDNY – 19.8% compared to 3.5% in USDC. *See id.* Because the case would not be more efficiently handled in SDNY, this factor weighs against transfer as well.

The last factor to consider is the benefit of having the case tried in a forum that is familiar with the applicable substantive law. Colorado's choice of laws rules apply and dictate that Colorado's substantive law applies to this dispute. *See Wiglesworth v. Pagel*, 614 Fed.Appx. 953, 956 (10th Cir. 2015) (federal court sitting in diversity applies law of the forum state).

This is because Colorado follows Section 145 of the Restatement (Second) of Conflicts of Laws, which provides that with respect to tort claims, the laws of the state with the most significant relationship to the parties and the occurrence will apply. *See AE, Inc. v. Goodyear Tire & Rubber Co.,* 168 P.3d 507, 510 (Colo. 2007). The contacts that are evaluated under section 145 are:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

Restatement 2d of Conflict of Laws, § 145 (2nd ed. 1988); *see AE, Inc., supra.*

Each of these factors points to the application of Colorado law. Swisslog is a corporation

whose principal place of business is in Colorado, and the failure of Marsh's Colorado employees to supply Hudson with information about Talyst must necessarily have occurred in Colorado. As explained above, the relationship between Swisslog and Marsh is centered in Colorado, where the employees who are responsible for managing the insurance and risk portfolios for Swisslog are all located. While Marsh's place of incorporation appears to be Alaska and its principal place of business New Jersey, neither of those states has any connection with the occurrence in this case (nor, of course, does New York).[6] [7] Exhibit 14. Colorado's substantive law applies to the tort claims asserted against Marsh in this lawsuit as a result.

Yet, Marsh contends New York law must be applied because of a choice of laws provision in the Agreement. Memorandum, p. 8-9. Marsh is incorrect. That provision states:

> The laws of the State of New York govern this Agreement, without regard to choice of law principles. This Agreement may only be amended by mutual written agreement.

Ex. 4, p. 3. A choice of laws provision is to be construed like other contracts, to determine the intent of the parties. *See Calabrese Found. v. Investment Advisors*, 831 F. Supp. 1507, 1511 (D.Colo. 1993). Thus, ambiguities are construed against the drafter. *See id.*

By its plain and unambiguous terms ("The laws of the State of New York *govern this Agreement* . . . ) (emphasis added), the Agreement's choice of laws provision only applies to claims concerning the validity or enforceability of the Agreement and/or the construction and interpretation of its terms and conditions.[8] Moreover, New York law would not permit

---

[6] Delaware, the state of Swisslog's incorporation, has no such connection either.
[7] *See e.g., Cahey v. IBM*, 2020 WL 5203787, at *13 (D.Colo. Sept. 1, 2020) (fact that Colorado, chosen forum, had "no material relation or significant connection to" the claims favored transfer).
[8] *See, e.g., Benchmark Elecs. V. J.M. Huber Corp.,* 343 F.3d 719, 726 (5th Cir. 2003) (language "Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York" governed contract claims only, not tort claims); *Caton v. Leach Corp.,* 896 F.2d 939, 942-43 (5th Cir. 1990) (holding choice of laws language ["this Agreement shall be construed under the laws of the State of California"] applied to only construction and

enforcement of the provision in this context because New York has *no* involvement in the Swisslog-Marsh relationship or Marsh's Denver-based employees' failures to provide information to Hudson. *See HR-Twenty Corp. v. Massachusetts Mut. Life Ins. Co.,* 1992 U.S. Dist. LEXIS 9852, at *6 (S.D.N.Y., July 1) (New York gives effect to choice of law provision so long as it has sufficient contacts with transaction at issue), citing *Hawes Office Sys., Inc. v. Wang Labs., Inc.*, 537 F. Supp. 939, 942 (E.D.N.Y. 1982); *CBS, Inc. v. Tucker*, 412 F. Supp. 1222, 1226, n.5 (S.D.N.Y. 1976).[9] Thus, Colorado law governs the tort claims asserted against Marsh. This outcome, in conjunction with the other applicable public interest factors, leads to the single conclusion that this case should not be transferred to New York.

        **C.**     **Swisslog's Claims Against Marsh Are Not Subject To Rule 12(b)(6) Dismissal.**

Lastly, dismissal of Swisslog's claims is not appropriate pursuant to Fed.R.Civ.P. 12(b)(6). The Complaint survives a Rule 12(b)(6) challenge if it contains sufficient factual matter to state a claim for relief that is "plausible on its face." *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quotations omitted). In making this assessment, the Court must accept all well-pleaded allegations in the Complaint as true and view them in the light most favorable to Swisslog.

---

interpretation of the agreement, not to extra-contractual tort claims); *Live Cryo, LLC v. CryoUSA Imp. & Sales, LLC,* 2017 U.S. Dist. LEXIS 149850, at *10 (E.D.Mich., Sept. 15) (holding language *"*[t]his Agreement is governed by the laws of the State of Texas*"* and "[t]he Agreement shall be construed in accordance with the Law of Texas" applied only to contract claims, not tort or quasi-contractual claims); *Hercules, Inc. v. Martin Marietta Corp.,* 143 F.R.D. 266, 268 (D.Utah 1992) (holding choice of laws provision "[t]he Contract shall be governed by, subject to, and construed according to the laws of the State of Colorado, except that when Federal common law of government contracts exists on substantive matters requiring construction under this Contract, such Federal common law shall apply in lieu of state law" governs contract interpretation and contractual relationship only, rather than subjects all relationships between the parties to entire substantive law of Colorado).

[9] *See also, Target Corp. v. Prestige Maint. USA, Ltd.,* 351 P.3d 493, 497 (Colo. App. 2013) (contractual law selection will not be applied if no reasonable basis for that choice).

*See id.*

As set forth above, Colorado law applies to Swisslog's claims. Under that law, insurance brokers owe a duty of reasonable care to their clients. *See Kaercher v. Sater,* 155 P.3d 437*,* 440-41 (Colo. App. 2006). Thus, Colorado recognizes causes of action against insurance brokers for negligence and negligent failure to procure, as well as negligent misrepresentation. An explicit denial of coverage based solely on the broker's negligence are not elements of these causes of action. *See* Memo., p. 9. *See Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc.,* 739 P.2d 239 (Colo. 1987) (elements of negligence claim against broker); *Colo. Pool Sys. v. Scottsdale Ins. Co.*, 317 P.3d 1262, 1272 (Colo. App. 2012) (elements of negligent misrepresentation claim against broker); *see also Valley Equip. Leasing, Inc. v. McGriff, Seibels & Williams of Or., Inc*., 2016 U.S. Dist. LEXIS 56735, at *14-15 (D.Colo. April 28, 2016).

The factual predicates for each of the necessary elements of the claims against Marsh are alleged in the Complaint. The Colorado cases Marsh cites do not hold otherwise. Indeed, they are wholly inapposite. *See* Memo., p. 8, n. 3. The issue in *Corsentino v. Hub Int'l. Ins. Services, Inc.,* 2017 U.S. Dist. LEXIS 156540 (D.Colo. August 30, 2017), was the accrual of the statute of limitations for the plaintiff's insurance bad faith, negligent procurement, and negligent misrepresentation claims against the insurer. Nothing in that opinion leads to the conclusion that an insurer must formally deny all coverage before a claim will lie against an insurance broker for negligent failure to procure.

Marsh is wrong about New York law as well. Even if that law were applicable (it is not), again an unequivocal denial of coverage is not an element of a claim against a broker for negligent failure to procure. Rather, New York law, like Colorado law, merely requires that damages be

sustained before a cause of action accrues against a broker for failing to obtain coverage that he represented was in place.

In *Bonded Waterproofing Services, Inc. v. Anderson-Bernard Agency, Inc.,* 86 A.D.3d 527, 530 (N.Y.App. Div.. 2011), cited by Marsh, the court held that the earliest claims for negligent misrepresentation and breach of contract against an agent accrued was when the insurance company denied coverage, because that was the earliest that the insured sustained damages (as opposed to when the subject policy was issued as the agent argued). *See id.* at 530. There was no question presented as to whether an insured can sustain damages, and therefore have a cognizable claim against an insurance agent, in the absence of a coverage denial by an insurer. This pertains as well to the determination in *Lewiarz v. Travco Ins. Co.,* 82 D.3d 1464, 1466 (N.Y.S. 2011).

As for *Dmitri Enterprises, Inc. v. NIF Services of New Jersey, Inc.,* 2020 U.S.Dist. LEXIS 213821 (S.D.N.Y. 2020), Marsh misrepresents that the court in that case "noted" "that New York courts follow the rule that 'negligence claims against an insurance agent accrue upon the denial of the insurance coverage.'" *See* Memo., p. 10. Rather, the federal district court stated: "New York courts *seem to be divided* over when a negligence claim against an insurance agent or broker accrues." *See id.* at *4 (emphasis added). The insured argued that another possible accrual date should be considered, based on the fact that it was not sued – and therefore did not need the insurance – until two years after the insurer denied coverage. *See id.* at *2-3, 4-5. Responding to that argument, the court concluded that it did not have a basis in New York law "[because] courts *have held* that negligence claims against an insurance agent accrue upon the denial of the insurance coverage, even where, as here, the plaintiff is not sued in connection with that denial until later." *Id.* at *5 (emphasis added). The court relied on a case that did not involve a suit against a broker

14

in support. *See id.* The point being, there was no issue in *Dmitri* about whether the insurance company had unequivocally denied coverage (it had) and thus no discussion about whether such was a necessary element of the insured's claim against the broker. *Dmitri* simply does not stand for the proposition that "[u]ntil this primary source of recovery from Hudson [the Hudson Policy] is foreclosed, Swisslog cannot plead the allegations necessary to sue Marsh." Memo, p. 9.

Nor does *A.B. Oil Services, Ltd. v. TCE Ins. Services, Inc.,* 188 A.D.3d 624 (N.Y.App. Div. 2020), advance Marsh's position. To the contrary, no claim had ever been made against the insured in *A.B. Oil.* Rather, the insured had discovered serendipitously that its insurance broker had not told the insurance company about a work project that the agent had indicated: a) was covered under an existing policy, and b) had been included in a quote for a renewal policy with the same insurer. *See id.* at 625. The insurer, upon becoming aware of the facts, advised that neither the original policy nor the renewal quote would provide coverage for the project. *See id.* Because no claim against the insured existed that could have been denied by the insurer, there was no actual controversy and no cause of action against the broker in tort for negligent failure to procure. *See id.* at 626. In this case, a full-blown lawsuit is pending against Swisslog; *A.B. Oil* does not apply.

Marsh's attempt to argue that a lack of causation also justifies dismissal is unavailing. Swisslog alleges that Hudson refused to participate in the settlement negotiations with Wellfount because of its coverage position (*e.g.,* that it did not exist because Talyst was not an insured and recission was justified) and that doing so prevented sufficient insurance dollars from being available to settle the litigation, prolonging Swisslog's involvement in litigation that led to losses for the company in employee time and other costs. *See* Doc. 1, ¶ 12-17. Marsh has not established that either Colorado or New York law requires that Hudson have issued an unequivocal claim

15

denial to establish causation. Likewise, Marsh cites no Colorado or New York decision indicating that a broker's conduct must be the sole reason for the insurer's coverage decision for liability to attach. *See* Memo., p. 12. Whether the insurer's coverage position was appropriate under the terms and conditions of the Hudson Policy is likewise irrelevant to a 12(b)(6) analysis; that is a factual question which the Court is not required to answer at the dismissal stage.

The suggestion that Swisslog has not pleaded damages arising from Marsh's conduct is also objectively incorrect. *See* Memo., p. 12. The Complaint and Jury Demand, in paragraphs 12 through 17, lays out how Marsh's failure to apprise Hudson of the Talyst acquisition led to Hudson's refusal to make its Policy limits available and that the absence of these limits prevented settlement of the Wellfount litigation and compelled Swisslog to expend resources to defend the case. Doc. 1, ¶¶ 12 – 17. The Court recognized the same in its order on the Motion for Administrative Closure. *See* Doc. 37.

Importantly, Swisslog also alleges that additional damages may be incurred in the event that a judgment against Swisslog is entered in the Wellfount litigation that exceeds the amount of insurance available under its other policies. Doc. 1, ¶ 17. But the fact that these losses have not yet occurred does not prevent Swisslog from pleading "all required elements of its claims against Marsh[.]" Memo., p. 13. Dismissal on this ground is improper as a result.

In summary, whether viewed under the applicable law of Colorado, or under New York law, Swisslog has alleged claims against Marsh that meet the pleading requisites and standards, such that dismissal under Rule 12(b)(6) is unwarranted. All that matters is that the factual

allegations necessary to support each of the elements of the claims against Marsh are contained within the operative pleading.[10]

For the foregoing reasons, the Motion should be denied. [11]

Dated this 20th day of May, 2021.

                                      Respectfully submitted,

                                      **LEVIN SITCOFF PC**

                                      *s/Kerri J. Rugh*
                                      Bradley A. Levin
                                      Kerri J. Rugh
                                      1512 Larimer Street, Suite 650
                                      Denver, Colorado 80202
                                      Telephone: (303) 575-9390
                                      Fax: (303) 575-9385
                                      bal@levinsitcoff.com; kjr@levinsitcoff.com
                                      ***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of May, 2021, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system and served on the following by the method indicated which will send notification of said filing to the following email addresses:

Joshua D. Maggard
Joseph P. Poehlmann
Joshua.maggard@quarles.com;
Joseph.poehlmann@quarles.com

                                      *s/Nicole R. Peterson*
                                      Nicole R. Peterson

---

[10] Footnote 4 in the Memorandum intimates that the negligent misrepresentation claim should be dismissed for the additional reason that a promise to do something in the future cannot be the basis for that cause of action. Swisslog, however, alleged that Marsh's representative "assured Swisslog that the information would be communicated to the relevant parties *and/or* that such communications *had been made*." Doc. 1, ¶ 20 (emphasis added).

[11] Marsh's request for a stay in the alternative appears to have been rendered moot by the Court's order declining administrative closure of this case. *See* Memo., p. 14.